**FILED**
**United States Court of Appeals**
**Tenth Circuit**

## UNITED STATES COURT OF APPEALS

### FOR THE TENTH CIRCUIT

**August 13, 2024**

**Christopher M. Wolpert**
**Clerk of Court**

_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

AUSTIN RAY,

    Defendant - Appellant.

No. 23-1284
(D.C. No. 1:14-CR-00147-CNS-2)
(D. Colo.)

_____

### ORDER AND JUDGMENT[*]
_____

Before **HOLMES**, Chief Judge, **HARTZ**, and **ROSSMAN**, Circuit Judges.
_____

Austin Ray appeals the district court's judgment sentencing him to eighteen months in prison for violating the conditions of his supervised release. Exercising jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742, we affirm.

## I. Background

In 2016, a jury convicted Mr. Ray of eight counts arising from the preparation of fraudulent income tax returns. The district court imposed a custodial sentence of

_____

[*] After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

120 months, followed by three years of supervised release.  The court also ordered Mr. Ray to pay $303,774.32 in restitution.

In January 2022, when Mr. Ray started his term of supervised release, he and his probation officer, Jordan Buescher, discussed his court-imposed supervised-released conditions.  Relevant here are the conditions prohibiting the commission of any new crime and requiring him to document and report income and compensation from any source.  Officer Buescher told Mr. Ray that, by signing monthly financial documents, he was certifying all information was true and correct, and that it would violate the law and the supervised release conditions to provide false statements.  The financial-disclosure forms contained the same warnings and cited the false-statements statute, 18 U.S.C. § 1001, which criminalizes knowingly and willfully making false statements to the government.

In June 2023, Officer Buescher filed a revocation petition based on six violations of the supervised-release conditions.  In this appeal, Mr. Ray challenges only the district court's determination on violations 1 through 3, which alleged he violated § 1001 by falsely stating his monthly financial reports for March through May 2022.[1]

---

[1] Violations 4 through 6 alleged that Mr. Ray failed to submit to a search by probation officers, failed to pay restitution as directed, and failed to truthfully answer a probation officer's inquiry about the source of funds Mr. Ray used to purchase a semi-truck for a business he had opened without prior approval from the probation office.

The district court held a hearing on the petition to revoke Mr. Ray's supervised release. Officer Buescher testified that in the report submitted for March 2022, Mr. Ray stated his only income was $254 in food stamps and a $40 gift from family members, he spent money only on groceries and health insurance, and he had no job or bank account. According to Officer Buescher, records obtained from a Wells Fargo account held solely in Mr. Ray's name showed $3,300 in deposits made in March 2022. Officer Buescher also testified that, in the April 2022 report, Mr. Ray similarly stated he received no employment income, had no bank account, and received only $254 in food stamps, but the Wells Fargo records again showed deposits—this time more than $11,000 was deposited or transferred into Mr. Ray's account. As for the May 2022 report, Officer Buescher testified that Mr. Ray reported he received about $2,700 in income, spent about $1,730 that month, and still did not have a bank account. Again, the Wells Fargo records showed more than $12,000 in deposits and almost $15,000 in withdrawals during the relevant time frame.

Mr. Ray's mother also testified at the revocation hearing. When Mr. Ray was first released, she explained, he spent a lot of time repairing rental properties she owned. She said the Wells Fargo account was set up for collecting rents from those properties and then used to pay mortgages and other expenses for them, including remodeling and repair. Any excess money was returned to her.

Mr. Ray similarly testified that he set up the Wells Fargo account primarily for keeping track of money his mother gave him from rent she collected, and he used that

3

money to pay for repairs on her properties. Excess money in the account was going toward a truck for a business Mr. Ray wanted to start. When the trucking business did not develop, Mr. Ray said, he returned $15,000 to his mother. Mr. Ray never viewed the money in the account as *his*, so he did not disclose it on his monthly reports. But Mr. Ray admitted using some of that money for personal living expenses, explaining he "had money coming in there too." R. vol. III at 181. He also explained he forgot to list a training-program payment he received from a job because the employer terminated his employment about two weeks after he started, and he thought he was disqualified from receiving the payment. *Id.* at 159; *see generally id.* at 158–160. Mr. Ray explained he did not believe he had intentionally or knowingly violated the conditions of his supervised release.

The district court found the evidence supported all six violations and sentenced Mr. Ray to eighteen months in prison to be followed by eighteen months of supervised release. Mr. Ray appeals.

## II. Discussion

Mr. Ray argues the district court misunderstood the law and never made the factual findings necessary for a § 1001(a) violation, which requires "knowingly and willfully" making false statements to the government:

> (a) Except as otherwise provided in this section, whoever, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, *knowingly and willfully --*
>
>> (1) falsifies, conceals, or covers up by any trick, scheme, or device a material fact;

4

(2) makes any materially false, fictitious, or fraudulent statement or representation; or

(3) makes or uses any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry;

shall be fined under this title, imprisoned not more than 5 years . . . or both.

§ 1001(a) (emphasis added).

As evidence of the district court's failure to consider § 1001(a)'s *mens rea* requirement, Mr. Ray points to the court's statement that "the obligations to report are just firm and in place. It doesn't matter if you intended to violate the terms and conditions. They've been violated. So your intention or inadvertence honestly does not matter, because these conditions are set in stone, and they do not require a separate intent factor." R. vol. III at 185–86. Mr. Ray argues his allegedly inadvertent failure to comply with the financial reporting requirements was central to his defense.

The government contends Mr. Ray waived this argument because he did not object to the district court's statements at the hearing and has not argued for plain error review on appeal. In his reply brief, Mr. Ray argues he preserved his argument by adequately challenging the government's evidence and testifying he did not intend to violate the financial-reporting condition. Alternatively, he argues that if we deem the argument waived, we should review for plain error.

We discern no error—plain or otherwise. *See United States v. Jones*, 818 F.3d 1091, 1097 (10th Cir. 2016) (reviewing revocation of supervised release for an abuse of discretion, including de novo review of any legal questions).

5

In the § 1001 context, a false statement is made (1) knowingly, if the defendant made it "knowing it was false"; and (2) willfully, if the defendant made it "deliberately, voluntarily and intentionally." Tenth Circuit Criminal Pattern Jury Instruction 2.46.1 (2021). Because a court "cannot read [a defendant's] mind," it must "infer his knowledge [for purposes of § 1001] from his behavior and all of the facts in evidence." *United States v. Fitzgibbon*, 576 F.2d 279, 284 (10th Cir. 1978).

We conclude the district court found Mr. Ray knowingly and willfully made false statements. When government counsel asked the district court to clarify if its "findings indicate that you find that all the elements . . . are met for a violation of 18 U.S.C. [§] 1001," the court replied, "I do." R. vol. III at 191. And the court's discussion of the evidence regarding § 1001's *mens rea* requirement shows it had. The court found Mr. Ray was required to report he had opened the Wells Fargo account but did not. The court also found that in his application to open the account in March 2022, Mr. Ray indicated he was employed but reported no employment on his monthly report, which he had to do "whether that was true or not," *id.* at 185, and regardless of "whether [the employment] was for his mother, for [his mother's] Tax Service, or for any of the[] trucking companies" that the evidence showed Mr. Ray might have worked for, *id.* at 185. The court further found Mr. Ray failed to report significant deposits and withdrawals reflected in the Wells Fargo documentation and there were "numerous and repeated expenditures for food, gas, restaurants, liquor stores, PlayStation, [and] Netflix. Clearly, these expenses are not related to the mother's operation of [her] properties." *Id.* at 186. Finally, observing that Mr. Ray's

6

restitution payments had "been notably failing," the court explained that "if you have money for liquor, restaurants, PlayStation, Netflix, et cetera, that should be going to your restitution obligation, which is the point of the disclosure . . . ." *Id.* at 197–98.

Our conclusion is not disturbed by the district court's comment that it was immaterial whether Mr. Ray separately intended to violate the conditions of his supervised release.  Reviewing the record as a whole, the district court's discussion of the evidence shows it considered but rejected Mr. Ray's position that he inadvertently violated the reporting requirement and found the government had met its burden regarding § 1001's *mens rea* element.

We affirm the district court's judgment.

Entered for the Court

Veronica S. Rossman
Circuit Judge